**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| CIBA Vision Corporation, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 1:09-cv-01343-JOF |
| Joseph De Spirito, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**OPINION & ORDER**

This matter is before the court on Plaintiff's motion to dismiss amended counterclaims [13]; Hoosier Eye Doctor's motion to intervene as Defendant and Counterclaim Plaintiff [19]; Plaintiff's unopposed motion to extend time to complete discovery [26]; and Plaintiff's motion to stay discovery [27].

**I.     Background**

**A.     Procedural History and Allegations of Counterclaim**

Plaintiff, CIBA Vision Corporation, filed suit against Defendant, Joseph De Spirito, on May 19, 2009.  In general terms, CIBA, a manufacturer of contact lenses, avers in its complaint that it has federal trademark protection for AIR OPTIX brand contact lenses, as well as NIGHT & DAY and DAILIES. CIBA further alleges that Joseph De Spirito, through

his business Hoosier Eye Doctor in Bloomington, Indiana, formerly purchased contact lenses from CIBA.[1]  But as of the date of the complaint, De Spirito was not an authorized distributor of CIBA Vision products and was not authorized to use CIBA's AIR OPTIX marks.

Beginning in April 2008, however, Defendant De Spirito registered approximately 36 domain names incorporating or mimicking CIBA's trademarks.  He then used some of the sites to post commercial websites as a means to sell AIR OPTIX branded contact lenses. According to Plaintiff, Defendant works to divert traffic to his websites by using CIBA's trademarks as meta tags in the source code of the infringing sites.  Plaintiff sent a cease and desist letter to Defendant De Spirito on January 20, 2009.

In its complaint, Plaintiff raises claims of trademark infringement, unfair competition, dilution and cyber-squatting.  Plaintiff also asks the court *inter alia* to enter a permanent injunction barring Defendant from using the trademarks and directing Defendant De Spirito to transfer the infringing domain names to Plaintiff.

Defendant filed an answer and counterclaims on July 14, 2009, and an amendment to that answer and counterclaim on August 7, 2009.  In his answer, Defendant generally avers that Plaintiff knew of his websites and even provided suggestions for their design so

---

[1]Because the court can resolve the instant motion on other grounds, the court leaves for another day the question of whether Defendant De Spirito has standing independent of non-party Hoosier Eye Doctor, Inc. to raise counterclaims.

that there would not be trademark issues. Defendant contends that Hoosier Eye Doctor has only sold one brand of contact lenses, and that is CIBA Vision. CIBA originally agreed to allow Hoosier Eye Doctor to sell contact lenses over a website, and even provided suggested changes to Defendant's websites, including offering coupons which provided rebates for the purchase of CIBA contact lenses through Hoosier Eye Doctor.

Defendant then avers that CIBA "permits other business entities to sell its products through websites, and to use its trademarks in conjunction with those Internet businesses." *See* Amended Answer & Counterclaim, ¶ 14. "Upon information and belief, CIBA Vision has entered agreements with other business entities which require it not to sell its product to Joseph De Spirito or Hoosier Eye Doctor, Inc., or others who would sell them for prices lower than those agreed to by the conspiracy." *Id.*, ¶ 15. "Upon information and belief, CIBA Vision has entered agreements with other business entities that are designed to assist third-party optometrists in tying eye exam services to the purchase of CIBA brand products." *Id.*, ¶ 16.

Defendant further contends that CIBA did not raise concerns about Hoosier Eye Doctor until "one or more other business entities complain[ed] to CIBA Vision that Joseph De Spirito and/or Hoosier Eye Doctor, Inc. were selling competitive products for prices sufficiently low as to cause them to compete on price." *Id.*, ¶ 18. As a result, Defendant De

3

Spirito asserts, CIBA is refusing to sell its product to Defendant on the same terms as it does to other eye doctors. *Id.*, ¶ 19.

To more fully understand the nature of Plaintiff's complaint and Defendant's counterclaim, a bit of context is required. End users of contact lenses are not permitted to purchase the lenses without a prescription. Eye doctors are required by law to specify a brand of contact lenses in the prescriptions they write. Vendors may not substitute a different brand of contact lenses. Therefore, Defendant De Spirito contends, contact lens manufacturers have incentive to entice eye doctors to prescribe their brand through disguised kick-backs, whereas the manufacturers do not have the same incentive with Internet vendors. *Id.*, ¶ 26. CIBA attempts to exclude internet vendors so that eye doctors can charge higher prices. *Id.*, ¶ 28. This action imposes an additional barrier on consumers who must incur the cost of a new eye exam to get a new prescription with a different type of contact lens. *Id.*, ¶ 30. For this reason, Defendant asserts that each brand of contact lens defines its own relevant market. *Id.*, ¶ 31.

In unnamed Count I of Defendant's counterclaim, Defendant asserts that CIBA's conduct caused Defendant De Spirito and Hoosier Eye Doctor to "reasonably rely upon their agreement to and cooperation with the operation of the websites. CIBA Vision cannot now withhold that agreement and cooperation without compensation." *Id.*, ¶ 33. In unnamed Count II, Defendant avers that CIBA's discrimination against him constitutes

4

"impermissible unfair competition." *Id.*, ¶ 35. In unnamed Count III, Defendant avers that CIBA's agreements with other businesses and discrimination against Defendant and his business "for selling below the agreed prices constitutes an impermissible restraint on interstate trade in violation of the antitrust laws of the United States." *Id.*, ¶ 37.

On August 17, 2009, Plaintiff wrote to Defendant asking Defendant to drop its federal antitrust counterclaim. Plaintiff identified what it believed to be the infirmities in Defendant's counterclaim. Plaintiff's counsel also wrote a separate letter asking Defendant to drop the remaining two counterclaims which purportedly would be state law claims. Defendant did not drop the counterclaims and Plaintiff filed the instant motion to dismiss.

In its response to Plaintiff's motion to dismiss counterclaims, Defendant's counsel appears to make substantive assertions concerning the counterclaims that do not appear in Defendant's amended answer and counterclaim. The court will discuss those additional allegations and consider them in conjunction with Plaintiff's motion. Because the court concludes that even with those additional allegations, Defendant's counterclaim would fail, the court finds it serves judicial economy to consider them as if they appeared in an amended counterclaim without requiring Defendant to formally amend his answer and counterclaims.

In his response to Plaintiff's motion to dismiss, Defendant clarifies his antitrust cause of action by arguing that his counterclaim supports three plausible antitrust violations by

5

CIBA Vision: (1) discriminating against the online sales of its contact lenses so as to create an artificial profit margin for eye doctors over online vendors, thereby creating a de facto kickback; (2) refusal to deal with Defendant De Spirito; and (3) bad faith filing of the instant litigation so as to protect "this regime of disguised kickbacks."  To support his contention about discriminating against online contact lens dealers, Defendant De Spirito points to a consent decree from an antitrust action brought by over 30 states which required CIBA Vision to refrain from discriminating against online sales of its contact lenses.  By requiring eye doctors to prescribe a specific brand of contact lenses, Defendant De Spirito contends, each brand is a relevant market unto itself.  Defendant De Spirito states that CIBA Vision's refusal to deal is not permissible when, as here, a party uses its market power in a way that leverages power.  Finally, Defendant De Spirito states that it is obvious that CIBA's trademark and cyber-squatting claims are without merit because CIBA approved Defendant De Spirito's websites.  Therefore, CIBA's complaint must have been in bad faith.

The court notes that at the time of the filing of the Joint Preliminary Report and Discovery Plan, Defendant reserved the option of arguing that the court is without personal jurisdiction over Defendant Joseph De Spirito and the parties were exploring whether to add Hoosier Eye Doctor, Inc., as a party to the suit.  Hoosier Eye Doctor filed the instant motion to intervene on December 4, 2009.

**B.    Contentions**

Shortly after Defendant filed its amended answer and counterclaims, Plaintiff filed the instant motion to dismiss the amended counterclaims. Plaintiff asserts that Defendant's counterclaim does not meet the Supreme Court's standards governing the specificity required for pleadings under the Federal Rules of Civil Procedure. Because it is Defendant's second amended counterclaim, Plaintiff asks that the court dismiss it without leave to re-plead. Specifically, Plaintiff argues that Defendant fails to identify any particular cause of action. He does not describe which aspect of "antitrust law" he contends Plaintiff has violated and fails to identify any "business entities" with which Plaintiff has conspired, or any information – times, places, dates, people – about the alleged conspiracy. Defendant does not allege any adverse impact on interbrand competition and any relevant market. Finally, Plaintiff argues that Defendant De Spirito does not have standing to raise an antitrust claim and has not alleged an antitrust violation because he may continue to sell contact lenses in his capacity as an eye doctor.

Defendant De Spirito responds that he is not required to specify whether he is proceeding under § 1 or § 2 for his antitrust allegation, although he contends that CIBA's actions violate § 2 if CIBA acted independently and § 1 if CIBA acted under agreement with eye doctors. He also avers that his counterclaim is "plausible" under *Twombly* and *Iqbal*.

7

## II.    Discussion

### A.    Pleading Standard on Motion to Dismiss

With the cases of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court has clarified the landscape surrounding the standards for notice pleading.  In *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252 (11th Cir. 2009), the Eleventh Circuit described the impact of *Twombly* and *Iqbal*.

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. ----, 129 S. Ct. 1937 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").  In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir.2005).  Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.*; *see also Iqbal*, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

> A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See Iqbal*, 129 S. Ct. at 1950 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62, 570 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard).  In *Twombly*, the Supreme Court emphasized a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations and emphasis omitted).

8

>   More recently, in *Iqbal*, the Supreme Court reiterated that although Rule 8 of the Federal Rules of Civil Procedure does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S. Ct. at 1949. A complaint must state a plausible claim for relief, and "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss. *Id.* The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

578 F.3d at 1260-61, 1268 (further noting that "complaint fails to allege when or with whom [defendant] entered into a conspiracy . . . The scope of the conspiracy and its participants are undefined" and rejecting conspiracy allegations "based on information and belief" that are without "factual content"). Defendant De Spirito attempts to distinguish these cases away on their facts, but this effort is unsuccessful. None of the cases is limited to its facts, but rather together they clarify the fact that complaints must be plausible even at the dismissal stage. The court must next apply this standard to the counterclaims in this case.

## B.    Antitrust Claims

Defendant De Spirito does not specify under which section of the Sherman Act his antitrust violations arise. As best the court can determine, one of Defendant De Spirito's antitrust claims can be characterized as refusal to deal. The offense of monopoly under Section 2 of the Sherman Act has two elements: "(1) possession of monopoly power in the relevant market and (2) willful acquisition or maintenance of that power as distinguished

9

from growth or development as a consequence of a superior product, business acumen, or historic accident." *Morris Communications Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1293-94 (11th Cir. 2004). Monopoly power includes power to exclude competition from the relevant market. *Id.* at 1294. The second element recognizes that certain practices can have the effect of preventing or excluding competition in the relevant market. *Id.*

> Two theories exist upon which to predicate a unilateral refusal to deal claim: (1) the intent test and (2) the essential facility test. Under the intent test, it is unlawful for a monopolist to maintain or extend its monopoly power by intentionally engaging in conduct that unnecessarily excludes competitors and impairs competition. Under the essential facility test, a company that has exclusive control over a facility essential to effective competition may not deny potential competitors access to that facility on reasonable terms and conditions if to do so would create or maintain monopoly power in the relevant market. The plaintiff has the burden of proving that the defendant controls an essential facility that cannot be practically or economically duplicated.

> In the absence of any purpose to create or maintain a monopoly, however, a company may deal or refuse to deal with whomever it pleases. Even a company with monopoly power has no general duty to cooperate with its business rivals and may refuse to deal with them if valid business reasons exist for such refusal. . . . [R]efusal to deal that is designed to protect or further the legitimate business purposes of a defendant does not violate the antitrust laws, even if that refusal injures competition.

*Morris Communications Corp. v. PGA Tour, Inc.*, 364 F.3d 1288, 1294-95 (11th Cir. 2004) (quotations and citations omitted).

Defendant De Spirito's other antitrust claims seem to relate to an allegation that CIBA Vision discriminated against on-line sales of contact lenses in order to create an

10

artificial profit market resulting in *de facto* kickbacks to the company. This allegation relates to Section 1 of the Sherman Act. Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. "Section One applies only to agreements between two or more businesses; it does not cover unilateral conduct." *Spanish Broadcasting System of Florida, Inc. v. Clear Channel Communications, Inc.*, 376 F.3d 1065, 1071 (11th Cir. 2004) (citing *Fisher v. City of Berkeley*, 475 U.S. 260, 266 (1986) ("Even where a single firm's restraints directly affect prices and have the same economic effect as concerted action might have, there can be no liability under § 1 in the absence of agreement.").

Further, under "Eleventh Circuit case law, alleged Section One agreements analyzed under the rule of reason require a plaintiff 'to prove (1) the anticompetitive effect of the defendant's conduct on the relevant market, and (2) that the defendant's conduct has no pro-competitive benefit or justification.'" *Id.* (citations omitted). "In alleging 'the anticompetitive effect of the defendant's conduct,' an antitrust plaintiff must show harm to competition rather than to competitors. That is, the 'anticompetitive effects' are measured by their impact on the market rather than by their impact on competitors." *Id.*

Finally, Defendant De Spirito advances the argument that CIBA Vision's filing of the instant lawsuit is a violation of antitrust law because it seeks to protect the alleged

"kickbacks." The Eleventh Circuit, however, has held that *Noerr-Pennington* immunity has expanded from its initial purpose of shielding a defendant from antitrust liability for efforts to petition government to pass legislation that would have monopolizing effects to now also shielding "a defendant from antitrust liability for resorting to litigation to obtain from a court an anticompetitive outcome." *Andrx Pharmaceuticals, Inc. v. Elan Corp., PLC*, 421 F.3d 1227, 1223 (11th Cir. 2005). An exception to this protection exists when a defendant engages in "sham litigation" where a lawsuit is nothing more than an attempt to interfere with the business of a competitor. *Id.* To prove "sham litigation," a plaintiff must establish: (1) the lawsuit is objectively baseless and (2) the party bringing the suit had a subjective motivation to interfere directly with the business relationships of a competitor. *Id.* at 1234.

The court now considers whether Defendant De Spirito has sufficiently plead these antitrust claims. In *Twombly*, consumers brought a class action complaint against incumbent local exchange carriers alleging an antitrust conspiracy to prevent competitive entry into the local telephone and Internet service markets. The complaint alleged that the carriers had conspired to restrain trade by (1) engaging in parallel conduct to inhibit the growth of competitive carriers and (2) by agreeing to refrain from competing against one another. The complaint alleged that the incumbent carriers achieved this by making unfair agreements with the competitive carriers for access to networks, providing inferior connections to networks, overcharging, and billing in ways to sabotage the competitive carriers'

12

relationship with their customers.  The complaint asserted that this common motivation led the incumbent carriers to form a conspiracy.  The complaint also alleged that the incumbent carriers had agreements to refrain from competing against one another because they failed to meaningfully pursue attractive business opportunities.  *See* 550 U.S. at 551 n.2 ("Beginning as early as February 6, 1996, and continuing to the present, the exact dates being unknown to Plaintiffs, Defendants and their co-conspirators engaged in a contract, combination or conspiracy to prevent competitive entry in their respective local telephone and/or high speed internet services markets by, among other things, agreeing not to compete with one another and to stifle attempts by others to compete with them and otherwise allocating customers and markets to one another in violation of Section 1 of the Sherman Act.").

The *Twombly* Court found, however, that "a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* at 556-57. "An allegation of parallel conduct is thus much like a naked assertion of conspiracy in a § 1 complaint: it gets the complaint close to stating a claim, but without some further factual enhancement it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 577 (quotations and citations omitted).  The Court then went on to discuss the enormously high costs of discovery in federal antitrust litigation. *Id.* at 557-59.  Ultimately, the Court concluded that nothing in the "complaint invests either the action or inaction

13

alleged with a plausible suggestion of conspiracy." *Id.* at 566. *See also Sinaltrainal*, 578 F.3d at 1268 (holding conspiracy allegations were "vague and conclusory," "the complaint fails to allege when or with whom [the defendant] entered into a conspiracy" and "[t]he scope of the conspiracy and its participants are undefined").

Based on the instruction of *Twombly* and *Sinaltrainal*, it is clear to the court that Defendant has not sufficiently alleged a conspiracy under Section 1 of the Sherman Act. Defendant has not described with whom Plaintiff is in a conspiracy or where or when these agreements were made. Defendant has not explained how Plaintiff's behavior plausibly suggests a conspiracy. Defendant has failed to allege that CIBA's decision to stop selling to Defendant amounted to anything more that would violate antitrust. Defendant De Spirito has not alleged how Plaintiff's behavior plausibly suggests a conspiracy. Nor has he alleged how CIBA Vision's conduct has harmed or impacted the market. Defendant De Spirito has not set forth how CIBA Vision's alleged refusal to allow him to sell its contact lenses on-line has weakened competition between CIBA Vision's contact lenses and those of their competitors. Nor has Defendant De Spirito alleged any facts that would show the instant litigation is "sham" either in that the suit is "objectively baseless" or that CIBA Vision had the "subjective" intent to "directly interfere" with Defendant De Spirito's business.

The court further finds that Defendant De Spirito has not sufficiently pled a Section 2 refusal to deal antitrust claim because he has not alleged that CIBA Vision has done

14

anything other than refuse to deal with whomever it pleases. Defendant De Spirito has not alleged any facts that CIBA Vision has refused to deal for reasons other than its own legitimate business purposes. The fact that CIBA Vision may have terminated sales "'in response to complaints' does not make out a prima facie showing of conspiracy." *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 763 (1984).

In addition to failing to sufficiently allege either a Section 1 or Section 2 violation, on the substantive merits of Defendant's antitrust claim, the pleading of the cause of action falls below that which is required. Prior cases have rejected the notion that a single brand can constitute a market. *See*, *e.g.*, *Generac Corp. v. Caterpillar Inc.*, 172 F.3d 971, 977 (7th Cir. 1999) ("Product markets are not defined in terms of one trademark or another; trademarks simply identify the origin of a product. Not even the most zealous antitrust hawk has ever argued that Amoco gasoline, Mobil gasoline, and Shell gasoline are three separate product markets . . ."). There is no allegation that CIBA Vision has a monopoly on contact lenses. *See also Sheridan v. Marathon Petroleum Co.*, 530 F.3d 590, 595 (7th Cir. 2008) (Posner, J.) ("Marathon" oil is "not a market . . . a trademark does not confer a monopoly; all it does is prevent a competitor from attaching the same name to his product").

While the court understands Defendant De Spirito's contention that the market for contact lenses is different because the brand of lens must be prescribed by the eye doctor, he offers no support for his follow-on assertion that this means each brand is a market unto

15

itself. Instead, as Plaintiff points out, for certain patented drugs prescribed by doctors, pharmacists are not permitted to use a substitute, but there can be no contention that a manufacturer who refused to sell that drug to a particular pharmacy would be liable for an antitrust violation.

Defendant De Spirito contends that it is suspicious that CIBA had originally granted him permission to operate the websites and then withdrew that authorization.[2] The court finds it not unusual at all that a trademark holder would authorize a third party to use the mark under specified circumstances and then later withdraw that authorization for a variety of reasons. Defendant has alleged no facts to show that his contention that the withdrawal was due to antitrust reason is plausible. Further, this change in authorization does not render CIBA's trademark claims per se without merit. If a trademark holder no longer authorizes a third party to use its marks, any continued use without authorization could possibly be a violation of trademark law, as in the situation of a food or hotel franchise, for example. What *Twombly* and *Iqbal* teach is that where there are other plausible explanations, it is not sufficient to speculate in a complaint and particularly to base that speculation on no facts at

---

[2] Defendant speculates out of whole cloth that the withdrawal occurred after CIBA received complaints from other eye doctors, but the counterclaim offers no information on the who-what-why-where of these complaints. Further, Defendant De Spirito has done nothing to explain how the instant situation goes beyond a legitimate "termination [that] came about in response to complaints" nor has he explained how an agreement can be inferred from the mere existence of complaints. *See Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 763-64 (1984).

16

all.  *See Iqbal*, 129 S. Ct. at 1949 (if complaint alleges facts that "are merely consistent with" defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief").  Although Defendant De Spirito avers that CIBA's concerns about the counterclaim's sufficiency problems "would be better addressed through routine discovery than by dismissal with prejudice," *Twombly* and *Iqbal* stand for the opposite – particularly where the expensive process of discovery in an antitrust suit is at stake.

Defendant De Spirito attempts to salvage his argument by contending that CIBA's rebates for eye exams in return for the purchase of CIBA lenses discriminates against the online sale of lenses by making the online sale at an effectively higher rate than the doctor's sale.  This effective increase in price, Defendant contends, allows eye doctors to make a larger mark up in their prices relative to what they would be able to achieve under a different brand.  Thus, CIBA's discrimination against online vendors acts as a kickback to eye doctors who agree to sell the CIBA brand.  But Defendant De Spirito's theory cannot account for the fact that he admits that CIBA sells its contact lenses to other internet customers.  *See* Amended Complaint, ¶ 14.  The coupons, in fact, are to encourage customers presently wearing a different brand of contact lenses, to go back to their eye doctor for a fitting and to request the CIBA contact lenses.  This indicates that there is market competition among brands.  Furthermore, as described above, a mere refusal to sell, without more, is not an actionable antitrust violation.  *See Mr. Furniture Warehouse, Inc. v. Barclays Am.*

17

*Commercial Inc.*, 919 F.2d 1517, 1522 (11th Cir. 1990) ("A monopolist's refusal to deal becomes actionable under the antitrust laws only where the refusal is designed to have an anticompetitive effect."). Defendant De Spirito's counterclaim does not describe that anticompetitive effect.

Finally, Defendant De Spirito avers that because of the requirement that eye doctors specify a brand of contact lenses in the prescription, "contact lens manufacturers should be required to act responsibly . . ., and not to tamper with the medical judgment of eye doctors, make it more expensive or less convenient for consumers to buy online, or otherwise act to the detriment of contact lens consumers." *See* Response [15], at 16. This argument may or may not be legitimate as a matter of public policy, but nothing in Defendant De Spirito's counterclaim or response to Plaintiff's motion to dismiss explains why it is a violation of antitrust law. For these reasons, the court finds that Defendant's antitrust counterclaim fails to meet the standard for pleading as described in *Twombly* and *Iqbal*.

## C. Remaining Claims

In unnamed Count I of Defendant's counterclaim, Defendant asserts that CIBA's conduct caused Defendant De Spirito and Hoosier Eye Doctor to "reasonably rely upon their agreement to and cooperation with the operation of the websites. CIBA Vision cannot now withhold that agreement and cooperation without compensation." *Id.*, ¶ 33. In response to Plaintiff's motion to dismiss this claim, Defendant argues only that the counterclaim does

18

not need to recite legal conclusions and the "counterclaims allege that Mr. De Spirito reasonably relied upon Ciba Vision's representations that he could operate the website they now complain of, leading him to invest in its development and operation, but that Ciba Vision is now preventing him from doing so.  That is sufficient to put Ciba Vision on notice that he is entitled to the equitable remedy of recovering his expenses incurred due to that reasonable reliance.  There is no need to invoke the magic words 'quasi-contract.'" *See* Response [15], at 18.  It is not clear to the court what this means and the court cannot discern a common law or statutory basis for this cause of action.

In unnamed Count II, Defendant avers that CIBA's discrimination against him constitutes "impermissible unfair competition." *Id.*, ¶ 35.  Defendant has not responded to Plaintiff's argument that Defendant has not identified any cognizable cause of action with respect to this count.  Moreover, Defendant De Spirito did not even attempt to further define his "unfair competition" claim in response to Plaintiff's motion to dismiss counterclaim. Thus, the court finds that Defendant De Spirito's remaining two counterclaims fail to state a cause of action.

The court must next consider whether to grant Defendant De Spirito leave to amend his counterclaim for the fourth time.  (Defendant De Spirito filed his answer and counterclaim on July 14, 2009.  He amended the counterclaim on August 7, 2009.  Finally, the court accepted Defendant De Spirito's response to Plaintiff's motion to dismiss

19

counterclaim as a new statement of his causes of action despite the fact that Defendant De Spirito's response contained new factual and theoretical allegations and he did not seek leave of the court to amend his answer and counterclaim.)  The court notes Defendant De Spirito has had ample opportunity to further specify his claims, particularly where Plaintiff provided Defendant two detailed letters pointing out deficiencies in Defendant's counterclaim.

Defendant simply has not made any effort to bring his counterclaims up to the standards articulated in *Twombly* and *Iqbal*.  The court notes, in particular, that other than discussions of *Twombly* and *Iqbal*, as well as an explanation of the legal landscape of contact lens prescriptions, Defendant's response contains only two legal citations: one of which generally defines markets for the purpose of antitrust law citing *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956); and a second which generally defines "antitrust injury" citing to *Cargill, Inc. v. Monfort of Colo., Inc.*, 479 U.S. 104, 122 (1986). There simply has been no effort by Defendant to explain to Plaintiff or the court why the vague and conclusory allegations raised in his counterclaims are sufficient under the pleading standards of Rule 8 as clarified in *Twombly* and *Iqbal*.  Therefore, the court does not grant Defendant further leave to amend his counterclaims.

20

### D.    Motion to Intervene

Hoosier Eye Doctor, Inc. seeks to intervene pursuant to Rule 24(a) and (b) arguing that the websites at issue in the litigation belong to Hoosier Eye Doctor and all of the revenue generated from them went to Hoosier Eye Doctor.  Hoosier Eye Doctor also states that any actions taken by Defendant De Spirito related to providing optometry services and selling optometry-related products were taken in his capacity as agent for Hoosier Eye Doctor.  Therefore, Hoosier Eye Doctor argues, Defendant De Spirito cannot adequately represent Hoosier Eye Doctor's interests because he will argue that any alleged harm done to CIBA Vision was committed by Hoosier Eye Doctor.  The two parties also have differing levels of insurance coverage.

Plaintiff opposes Hoosier Eye Doctor, Inc.'s motion to intervene arguing procedurally that it is untimely under this court's local rules and the parties' Joint Preliminary Planning Report, and improper under the same rules because Hoosier Eye Doctor did not seek leave of the court before filing the motion.  Plaintiff also contends that Hoosier Eye Doctor did not comply with Rule 24(c)'s requirement that the proposed intervenor attach a pleading to its motion setting forth the claim or defense for which intervention is sought.  Substantively, CIBA Vision argues that the interests of Hoosier Eye Doctor are adequately protected by Joseph De Spirito's presence in the case.  Finally, Plaintiff states that it would not oppose the intervention of Hoosier Eye Doctor were the court not to allow Hoosier Eye Doctor to

21

change the counterclaims raised by De Spirito and which already had been fully briefed in Plaintiff's motion to dismiss counterclaims.

The court notes for the purpose of context that Hoosier Eye Doctor is and has been represented by the same counsel who represent Joseph De Spirito. Significantly, Hoosier Eye Doctor does not inform the court what claims it intends to bring or whether it will be joining Defendant De Spirito's counterclaims. Hoosier Eye Doctor does state it "is likely entitled to file a declaratory judgment action" which would have to be consolidated with the instant action anyway. Hoosier Eye Doctor's brief on its motion to intervene does not satisfy the requirements of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 24(c) (stating that motion to intervene must "state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought").

Again, in the interest of judicial economy, the court will not deny the motion to intervene on the basis of these procedural issues only. The court understands that the basis for Hoosier Eye Doctor's intervention is as the owner of the websites at issue and to protect itself against any potential efforts by De Spirito to shift blame (although that may be difficult under the present circumstances of De Spirito and Hoosier Eye Doctor sharing counsel). Those domain names, however, relate only to Plaintiff's trademark and unfair competition claims. The only possible relation Hoosier Eye Doctor claims to De Spirito's counterclaims

22

is that CIBA Vision has argued in its motion to dismiss that De Spirito does not have standing to bring the antitrust counterclaim.

Under Federal Rule of Civil Procedure 24, intervention may either be as of right or permissive. To establish intervention as of right, an applicant must show that (1) his motion is timely, (2) he has an interest relating to the property or transaction that is the subject of the action, (3) the disposition of the action may impede the applicant's ability to protect his interests, and (4) his interests are not adequately represented by the existing parties to the suit. *United States v. City of Miami*, 278 F.3d 1174, 1178 (11th Cir. 2002). Permissive intervention is proper when "an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b). Before granting a motion for permissive intervention, the court must consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.*

The court finds that on the basis of Hoosier Eye Doctor's alleged ownership of the domain names at issue, it potentially has an interest relating to the property that is the subject of the instant complaint. It is less clear to the court that Hoosier Eye Doctor's interests could not be adequately protected by De Spirito. However, in the interest of resolving all of these claims in one litigation, and because the parties have only begun to engage in litigation, the court will grant Hoosier Eye Doctor's motion to intervene as to Plaintiff's claims of trademark infringement, unfair competition, dilution and cyber-squatting only.

23

The court will not permit the intervention of Hoosier Eye Doctor to re-open the issue of De Spirito's now-dismissed counterclaims. The court agrees with CIBA Vision that the counterclaims had already been fully briefed by the parties and De Spirito had three opportunities to adequately plead those claims and was unable to do so prior to Hoosier Eye Doctor's motion to intervene. The court will not permit De Spirito to use the vehicle of intervention to get a fourth bite at that apple, particularly where Hoosier Eye Doctor's own pleadings demonstrate no basis upon which Hoosier Eye Doctor's intervention would impact the dismissed counterclaims. The court notes also that it did not rely on CIBA Vision's standing argument in dismissing De Spirito's antitrust counterclaim and therefore that cannot form the basis for Hoosier Eye Doctor's intervention.

The court agrees that with the addition of Hoosier Eye Doctor to the litigation, discovery will need to be extended. Thus, the court GRANTS Plaintiff's motion to extend discovery for a period of sixty (60) days from the date of this order. Because the court has addressed the motions to stay and intervene, the court DENIES AS MOOT Plaintiff's motion to stay discovery.

## III.    Conclusion

The court GRANTS Plaintiff's motion to dismiss amended counterclaims [13]; GRANTS IN PART AND DENIES IN PART Hoosier Eye Doctor's motion to intervene as Defendant and Counterclaim Plaintiff [19]; GRANTS Plaintiff's unopposed motion to

AO 72A
(Rev.8/82)

extend time to complete discovery [26]; and DENIES AS MOOT Plaintiff's motion to stay

discovery [27]

     **IT IS SO ORDERED** this 10th day of February 2010.


                              /s   J. Owen Forrester
                              J. OWEN FORRESTER
                SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)